THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : 3:96-CR-191 |
| | : (JUDGE MARIANI) |
| ASHANTI HENRY, | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Pending before the Court is Defendant Ashanti Henry's "Petition for Writ of Error *Coram Nobis* Pursuant to 28 U.S.C. § 1651(a)" ["Motion"]. (Doc. 77). Defendant has filed this Motion pro se in an attempt to have his felony drug distribution conviction from 1997 reduced to a misdemeanor involving simple possession. (*Id.* at 15).

A federal grand jury returned a one-count indictment on July 30, 1996, charging Defendant Ashanti Henry[1] with the intent to distribute and the distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). (Doc. 1).

On March 18, 1997, the court held a change of plea hearing where Defendant pled guilty pursuant to a written plea agreement. (Docs. 40–43). During this hearing, the Defendant was found to be competent to offer a plea (Doc. 85-1, at 3:4–5:23). Based on the

---

[1] Ashanti Henry is also known as Shaun Johnson as reflected in some parts of the record.

1

Defendant's sworn testimony, the Court found that the Defendant's plea of guilty was "a knowing and voluntary plea supported by an independent basis in fact." (*Id.* at 24:1-13).

Defendant was sentenced on June 24, 1997 to fifteen months imprisonment and three months supervised release, as well as ordered to pay a special assessment of $100.00. (Doc. 47).

On November 4, 1999, a warrant was issued after Defendant violated the conditions of his supervised release. (Doc. 50). Probation jurisdiction was transferred to the Eastern District of Tennessee on January 4, 2000. (Doc. 52).

On August 20, 2012, fifteen years after his conviction, the Defendant moved to vacate his sentence pursuant to 28 U.S.C. § 2255. (Doc. 60). Defendant sought to vacate his sentence on the grounds of ineffective assistance of counsel and breach of a plea agreement. (*Id.* at 6–9). On March 4, 2014, Defendant's motion was denied because Henry was no longer in federal custody pursuant to the conviction he sought to challenge and the motion was time-barred. (Doc. 63).

On September 10, 2013, Defendant entered a plea of guilty to an indictment filed in the Western District of Virginia, alleging "a conspiracy to possess with intent to distribute 280 grams or more of cocaine base and 5 kilograms or more of cocaine." (Judgment, Doc. 77, at 21). The United States Attorney for the Western District of Virginia identified two prior convictions, including the 1997 conviction, as reasons to enhance Defendant's sentence. (Am. Sentencing Enhancement Information, Doc. 77, at 27). Defendant was sentenced to

imprisonment for a term of thirty years and supervised release for a term of ten years. (Judgment, Doc. 77, at 22–23).

On May 24, 2018, the Defendant filed a Petition for Writ of Error *Coram Nobis* pro se. (Doc. 77). The parties have fully briefed the Motion and it is ripe for decision. For the reasons set forth below, the Court will deny Defendant's Motion. (Doc. 77).

## II. ANALYSIS

Defendant's Motion seeks to "vacate both the sentence and the conviction and enter an order to remand the case for entry of a conviction for simple possession of cocaine pursuant to 21 U.S.C. § 844(a)." (Doc. 77, at 15). Defendant claims his attorney provided ineffective assistance of counsel when he advised Defendant to enter a plea of guilty to the 1996 indictment. (*Id.* at 1–2). Defendant's argument will not meet the burden required to prove he is entitled to a writ of error *coram nobis*.

The power to grant a writ of *coram nobis* is conferred upon the federal courts by the All Writs Act. *United States v. Denedo*, 556 U.S. 904, 911, 129 S. Ct. 2213, 2221, 173 L. Ed. 2d 1235 (2009)(citing 28 U.S.C. § 1651(a)). The writ provides an opportunity to "challenge a federal conviction where a party, who is no longer in custody for purposes of § 2255, faces continuing consequences as a result of being convicted." *Ragbir v. United States*, 950 F.3d 54, 62 (3d Cir. 2020). *Coram nobis* is an "extraordinary remedy" that is granted "only under circumstances compelling such action to achieve justice." *United States v. Morgan*, 346 U.S. 502, 511, 74 S. Ct. 247, 252, 98 L. Ed. 248 (1954). The Supreme Court

has noted, "[I]t is difficult to conceive of a situation in a federal criminal case today where [a writ of *coram nobis*] would be necessary or appropriate." *Carlisle v. United States*, 517 U.S. 416, 429, 116 S. Ct. 1460, 1468, 134 L. Ed. 2d 613 (1996)(alteration in original).

The judicial interest in finality of judgments requires the standard for obtaining such relief be "more stringent" than the standard required for a direct appeal or even habeas corpus petition under Section 2255. *United States v. Stoneman*, 870 F.2d 102, 106 (3d Cir. 1989). *Coram nobis* relief is "limited to correct errors of the most fundamental character." *United States v. Osser*, 864 F.2d 1056, 1059 (3d Cir. 1988). Furthermore, the prior proceedings challenged by the writ are presumed to be properly conducted and the burden is placed on the petitioner to show otherwise. *Ragbir*, 950 F.3d at 62 (citing *Morgan*, 346 U.S. at 511, 74 S. Ct. 247).

A petitioner seeking a writ of *coram nobis* must prove five elements: "The petitioner (1) is no longer in custody; (2) suffers continuing consequences from the purportedly invalid conviction; (3) provides sound reasons for failing to seek relief earlier; (4) had no available remedy at the time of trial; and (5) asserted error(s) of a fundamental kind." *Id.*

Henry meets the first element as he is no longer in federal custody pursuant to the 1997 conviction that he is challenging here. (*See* Doc. 63). However, he has not demonstrated that he meets the other four elements.

As to the second element, Defendant argues that he suffers three continuing consequences since his 1997 conviction: he lost his right to vote in the state of Tennessee,

he is prohibited from possessing a firearm, and he was subject to enhanced penalties on future convictions. (Doc. 77, at 3–4).

The penalties cited by Henry have been held to be continuing consequences which can be challenged through a writ of *coram nobis*. *United States v. Cariola*, 323 F.2d 180, 182 (3d Cir. 1963)(holding the right to vote and the subsequent imposition of a heavier sentence to be continuing consequences); *United States v. Keane*, 852 F.2d 199, 203 (7th Cir. 1988)(suggesting in *dicta* that the right to bear arms may be a continuing consequence); *United States v. Osser*, 864 F.2d 1056, 1059 (3d Cir. 1988)(explaining further *Cariola* and *Keane*).

However, the petitioner must also prove that "his convictions in this case are the source of the continuous penalties he cites." *United States v. Rankin*, 1 F. Supp. 2d 445, 456 (E.D. Pa. 1998), *aff'd*, 185 F.3d 863 (3d Cir. 1999). As the Government correctly argues, the consequences identified by Henry are not uniquely the result of his 1997 conviction; his later convictions would have the same effect. (Doc. 85, at 9).

In 2005, Henry was convicted of possession with the intent to resale Schedule 1, MDMA in violation of Tennessee state law. (Am. Sentencing Enhancement Information, Doc. 77, at 27). In 2013, Henry was convicted of conspiracy to possess with intent to distribute 280 grams or more of cocaine base and 5 kilograms or more of cocaine in violation of federal law. (Judgment, Doc. 77, at 21). Even if the 1997 conviction was modified, Henry would still be prohibited from voting and owning a firearm pursuant to his

subsequent felony convictions. (*See id.* at 23–24). Additionally, the terms of Henry's plea agreement which resulted in his 2013 conviction stated that it would limit the enhancement by relying only on one of Henry's prior felony drug convictions. *United States v. Henry*, No. 1:12-CR-00024-1, 2017 WL 2063014, at *1 (W.D. Va. May 15, 2017). Therefore, the 1997 conviction is not the only reason he is subject to heavier sentencing. Henry would have been subject to enhanced penalties because of his prior felony drug convictions regardless of the 1997 conviction.

Third, Henry has asserted no sound reasons for his delay in filing his petition. While there is no explicit time limit that applies to *coram nobis*, a petitioner must demonstrate there were sound reasons for his delay—a standard that is "even stricter than that used to evaluate § 2255 petitions." *Mendoza v. United States*, 690 F.3d 157, 159 (3d Cir. 2012). "[T]he more time that elapses between a party's conviction and his petition for *coram nobis*, the less likely it becomes that sound reasons exist." *Ragbir*, 950 F.3d at 63.

Defendant claims he "was under advice of counsel to not file anything in the Court." (Doc. 77, at 7). The Third Circuit has denied relief where a defendant cites counsel's advice as a reason for delaying filing for relief. In *Mendoza,* the Court held that "even if counsel's deficient performance may have precluded him from seeking relief at the time of his plea," there was no sound reason why the petitioner waited four years to file for *coram nobis* relief. *Mendoza*, 690 F.3d at 159. *See also United States v. Glover*, 541 F. App'x 148, 149 (3d Cir. 2013)(denying *coram nobis* after defendant's ten-year delay).

Likewise, here, Henry has provided no sound reason why he has delayed seeking relief for 21 years. Assuming, for purposes of analysis only, that Henry's counsel initially advised him "to not file anything," there is no sound reason why he has not asserted a claim in the more than two decades since that point.

Defendant also claims that he delayed seeking relief because he only recently realized the continuing consequences of his conviction when he was allegedly attacked in 2004 but did not have a firearm to defend himself (Doc. 77, at 7), when he decided he wanted to vote in 2012 (*Id.* at 7), and when he was subjected to an enhanced sentence due to prior felony convictions in 2013 (*Id.* at 8). First, "A defendant seeking to avoid the collateral consequences of a conviction cannot postpone seeking relief until it appears that a collateral consequence is imminent." *Ragbir*, 950 F.3d at 63. Second, not having realized the continuing consequences of a conviction is insufficient to meet the strict standard required to prove there were sound reasons for a twenty-year delay in filing a petition.

Furthermore, Defendant cannot meet the fourth prong as there were remedies available to him when he was first convicted. Henry had earlier opportunities to raise his claims during his plea colloquy[2] (*See* Docs. 40–43, 85-1) and his Section 2255 motion filed in 2012 (*See* Docs. 60, 63).

---

[2] Defendant's Reply brief objects to the Government's use of a transcript of his 1997 change of plea hearing. (See Tr., Doc. 85-1). Defendant attempted to purchase the transcript in 2017, but a letter from the Official Court Reporter states, "I have checked with the Clerk's office and regret to inform you that after a diligent search for these particular records, the steno notes and tapes from this case have been disposed of, due to the fact that the case is very old." (Doc. 89, at 32). Defendant asserts he would have used the

7

Defendant contends that "due to the erroneous advice and actions of Gerald M. Karam [Henry's counsel at the time] there was no true remedy available at the time of trial." (Doc. 77, at 5–6). He argues, "Petitioner's Counsel rushed the Petitioner into a guilty plea by unduly persuading the Petitioner that pleading guilty is the only option." (*Id.* at 5). These assertions directly contradict Henry's own sworn testimony at the plea colloquy in 1997 wherein Henry testified that he was satisfied with the advice and efforts of his counsel:

> COURT: Okay, good. I find that Mr. Johnson is competent to offer a plea at this time. Have you had enough time to discuss this case with Mr. Karam?
> DEFENDANT: Yes.
> COURT: Have you told him everything you know about this case?
> DEFENDANT: Yes, sir.
> COURT: Are you satisfied with his advice and efforts on your behalf?
> DEFENDANT: Yes, sir.

(Doc. 85-1, at 6:15–25). Henry also testified that his decision to enter a guilty plea was entirely voluntary:

---

transcript to demonstrate "fundamental defects" in the plea colloquy. (*Id.* at 5–6). Defendant is "requesting this Court to 'strike down' and 'strike off'" the transcript from the record. (*Id.* at 5).

Defendant's Reply states no legal basis to support his request. The transcript is an official record and the Court is entitled to consider it. There is no evidence to suggest the Government acted in bad faith in obtaining the transcript. This case was closed two decades ago; it is not unimaginable that the transcript was not accessible when it was initially requested. (*See* Government's Mot. For Extension of Time, Doc. 81, ¶ 4 (requesting "additional time to see if its file is still in archives"), and Government's Mot. For Extension of Time, Doc. 83, at ¶¶ 4–6 (requesting a second extension to allow the Clerk of Court to obtain the Court's file, which had to be ordered from archives, and to have appropriate transcripts created from the filed notes in the Court's file as transcripts were never created in this case)).

Once the transcript was filed as a part of the opposition brief, the Defendant did not seek to amend his petition or submit a supplementary brief. The Defendant has not been prejudiced by the use of the transcript as he has presented the arguments he says he would have made based on the transcript of the hearing in his Reply brief. (Doc. 89, at 3–6). Therefore, the Court will not strike the transcript, but will address Henry's arguments in its analysis. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)(recognizing courts generally give greater leeway to pro se litigants).

8

> COURT: Has anyone forced you, in any way, to plead guilty?
> DEFENDANT: No, sir.
> COURT: Has anyone threatened you, in any way, to cause you to plead guilty?
> DEFENDANT: No sir.
> COURT: And is your decision to plead guilty entirely voluntary?
> DEFENDANT: Yes, sir.

(*Id.* at 22:18–23:1).

Moreover, Henry cannot credibly argue he was not informed he did not have to accept the plea agreement. At the plea colloquy, the Court informed Henry that if he did not enter a plea of guilty, he would have a trial; and, the Court explained all of the rights and protections afforded to defendants at trial. (*Id.* at 7–10). The Government then explained all the evidence that would be used at trial to demonstrate Henry's guilt. (*Id.* at 20–22). Henry admitted the facts alleged by the Government were accurate, expressed no disagreement with any of the evidence, and agreed the Government would be able to prove all the facts it alleged beyond a reasonable doubt. (*Id.* at 22:6–12). Despite having the opportunity, at no point during the plea colloquy did Henry express disapproval with his counsel's efforts or claim his plea was not knowing or voluntary.

Henry further asserts, "Counsel also told the Petitioner that he would not be able to file an appeal or pursue any post conviction motions." (Doc. 77, at 5). Defendant voluntarily waived these rights through his plea agreement. Defendant's 1997 plea agreement was not

able to be produced by any party; however, the essential terms of the plea agreement were read on the record during the plea colloquy.[3] (Doc. 85-1, at 11–12, 15–16).

> MR. GURGANUS: ... There is, in addition, a waiver of appeal in this plea agreement, and the Defendant acknowledges his rights to appeal sentences imposed. And acknowledging that right, he's waiving any appeal of your sentence that is imposed within the statutory maximum, as well as waiving any collateral challenges pertaining to the sentence and the manner in which the sentence was determined. That Your Honor, are the main points of the plea agreement.
> COURT: All right. Did you listen to Mr. Gurganus' statement?
> DEFENDANT: Yes.
> COURT: It was a long statement, but do you disagree with any part of it?
> DEFENDANT: No, sir.

(*Id.* at 15:24–16:13). Defendant also testified that he read the plea agreement, discussed it with his attorney, and understood the terms before signing it (*Id.* at 10:10–18). The Court specifically asked Defendant if he understood he was waiving his appeal rights:

> COURT: Do you understand that you've waived your right to appeal the sentence I've imposed?
> DEFENDANT: Yes, sir.
> COURT: That I will impose in this case. And do you understand that, generally speaking, waivers of appeal have been enforced by the Courts, so that you are effectively giving up your right to appeal the sentence?
> DEFENDANT: Yes, sir.

(*Id.* at 20:5-12).

Defendant additionally had the opportunity to raise a Section 2255 motion, but did not do so until August 20, 2012—fifteen years after his conviction. (*See* Mot. to Vacate

---

[3] Prior proceedings, including Defendant's 1997 plea colloquy, are presumed to be valid. *Ragbir,* 950 F.3d at 62 (citing *Morgan,* 346 U.S. at 511, 74 S. Ct. 247). Defendant has not challenged the validity of the colloquy; therefore, the Court will presume the reading of the plea agreement's essential terms is accurate.

under Section 2255, Doc. 60; Order Den. Mot., Doc. 63). Henry's failure to timely assert an ineffective assistance of counsel claim cannot justify granting *coram nobis* relief. *United States v. Baptiste*, 223 F.3d 188, 190 (3d Cir. 2000)(affirming denial of writ where the defendant had an opportunity to raise his claims in a Section 2255 motion); *Osser*, 864 F.2d at 1062 (holding writ was properly denied where the defendant failed to appeal). Therefore, Henry did have remedies available to him at the time he entered his plea of guilty.

Defendant cannot satisfy the final element needed for *coram nobis* relief because he has not supported his claim that there was a fundamental error during his proceedings.

A fundamental error in the context of the writ of *coram nobis* refers to "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Woods*, 986 F.2d 669, 676 (3d Cir. 1993). Within the Third Circuit, a claim of ineffective assistance of counsel is "normally considered fundamental." *Ragbir*, 950 F.3d at 63; *United States v. Rad-O-Lite of Philadelphia, Inc.*, 612 F.2d 740, 744 (3d Cir. 1979).

While ineffective assistance of counsel may be a fundamental error, the Defendant has not established the elements required to prove his counsel was ineffective, let alone so ineffective that the result was a complete miscarriage of justice.

In order to state a claim for ineffective assistance, the defendant must show: (1) the defense counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). *See Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203

(1985)(holding *Strickland* applies to defendants seeking to challenge guilty pleas based on the ineffective assistance of counsel).

To show a counsel's performance was deficient, the defendant must show counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687. Henry cannot demonstrate his counsel's performance was objectively unreasonable.

Defendant's claim rests on four allegations. First, Defendant alleges his counsel "misinform[ed] or misrepresent[ed]" the plea agreement: "The Petitioner's attorney told the petitioner that he would be pleading guilty to a misdemeanor possession of cocaine and that the petitioner could not file an appeal or 2255 Motion." (Doc. 77, at 9). Defendant argues that the impact of this alleged misrepresentation was that "the Petitioner's plea was involuntary." (*Id.* at 10).

Defendant's claim that he did not know he was pleading guilty to a felony is again in direct contradiction to his sworn testimony at his plea colloquy, wherein he was told his plea would result in a felony conviction:

> COURT: …Do you understand that, as a consequence of your plea of guilty to this, you'll have a felony conviction?
> DEFENDANT: Yes, sir.
> COURT: Do you understand that, as a result of having a felony conviction, you may lose valuable Civil Rights, such as the right to vote, the right to hold public office, the right to serve on a jury and the right to possess any kind of firearm?
> DEFENDANT: Yes, sir.

(Doc. 85-1, at 17:15-24).

Furthermore, Defendant's counsel's alleged statement that Defendant could not file an appeal or collateral challenge was not objectively unreasonable as the Defendant waived these rights in his plea agreement. The Government's summary of the plea agreement stated:

> ...There is, in addition, a waiver of appeal in this plea agreement, and the Defendant acknowledges his rights to appeal sentences imposed. And acknowledging that right, he's waiving any appeal of your sentence that is imposed within the statutory maximum, as well as waiving any collateral challenges pertaining to the sentence and the manner in which the sentence was determined.

(*Id.* at 15:24–16:5). When asked if he read the plea agreement, if he discussed it with counsel, and if he understood it, Defendant replied in the affirmative. (*Id.* at 10:10-18). Even so, the Court further clarified:

> COURT: Do you understand that you've waived your right to appeal the sentence I've imposed?
> DEFENDANT: Yes, sir.
> COURT: That I will impose in this case. And do you understand that, generally speaking, waivers of appeal have been enforced by the Courts, so that you are effectively giving up your right to appeal the sentence?
> DEFENDANT: Yes, sir.

(*Id.* at 20:5-12).

Despite Defendant's claims now, the Court, based on his sworn testimony, found that the Defendant's plea of guilty was "a knowing and voluntary plea supported by an independent basis in fact." (*Id.* at 24:1-13).

In addition to the argument addressed above, Defendant's next three arguments in support of his ineffective assistance of counsel claim all relate to his counsel's trial strategy.

13

Defendant alleges his counsel rejected his "valid non-frivolous defense to present before a jury"; namely, that the cocaine was for personal use, not distribution (Doc. 77, at 11). Defendant, then, alleges his counsel incorrectly told him ten grams of cocaine did not constitute "personal use," and cites in support thereof a number of cases where more than ten grams of cocaine was considered personal use. (*Id.* at 12). Defendant additionally claims, "Counsel never filed for a motion for discovery in this case which is consisitent [sic] with the Petitioner's contention that his counsel did not want to pursue a trial defense." (*Id.* at 14). Specifically, Defendant suggests his attorney advised him to plead guilty after "'only' reviewing the Prosecutor's file" (Doc. 89, at 11) and failing "to secure the alleged 39 packets of cocaine and the '500 dollars' of US Currency, that was allegedly used" (*Id.* at 2). Defendant again argues his counsel's alleged ineffective assistance "certainly influenced the Petitioner's decision to plea guilty." (Doc. 77 at 12).

None of Defendant's remaining arguments prove counsel's performance was objectively unreasonable. The suggestion that Defendant accept a plea agreement instead of risking a jury trial is a matter of strategy. "*Strickland* and its progeny make clear that counsel's strategic choices will not be second-guessed by *post-hoc* determinations that a different trial strategy would have fared better." *Rolan v. Vaughn*, 445 F.3d 671, 681–82 (3d Cir. 2006). The Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052. Defendant's theories regarding his defense do not overcome the strong

14

presumption that his counsel's performance was objectively reasonable. These theories also do not undermine the finding that Henry's guilty plea to possession with the intent to distribute and distribution of cocaine was knowing and voluntary. At the change of plea hearing, Henry listened to the Government's attorney explain all of the evidence which would be used to prove each element of the offense and agreed it was all accurate and could be proven by the Government beyond a reasonable doubt. (Doc. 85-1, at 20:21–22:12).

Because Defendant cannot prove that his counsel's performance was deficient, Defendant will not be able to prove that his counsel's performance prejudiced him. *Id.* at 687 ("Unless a defendant makes both showings, it cannot be said that the conviction...resulted from a breakdown in the adversary process that renders the result unreliable.").

Defendant claims that there were two other fundamental errors during his change of plea hearing. First, Henry claims:

> MR. GURGANUS, 'failed' to explain the specific year of what sentencing guidelines applied to Petitioner's offense. MR. GURGANUS intentionally 'failed' to explain the year 1996 Sentencing Guidelines in reference to Petitioner's offense based on NO specific guideline range exist for ... Petitioner's offense for the year of 1996.

(Doc. 89, at 3)(ellipsis original). Second, Defendant claims he was "sentenced based on a sentence guideline range, NOT the actual amount of drugs involved." Essentially, Defendant contends that he should not have been sentenced based on guidelines involving convictions

for less than 25 grams of cocaine, but instead, his sentence should be based on his possession of ten grams of cocaine specifically. (*Id.* at 4).

Neither of these assertions are errors at all, let alone fundamental errors that would require *coram nobis* relief. Defendant testified that he reviewed the guidelines applicable to his case with his attorney and that he understood his sentence would be governed by those guidelines. (Doc. 85-1, at 11:2-20, 18:10–20:1). In addition, the Court made clear to Defendant that the guideline range applied in the case would largely be based on the amount of drugs found to be involved and a pre-sentence investigation report. (*Id.* at 18:14–19:10). Defendant has not presented a cognizable error based on the change of plea hearing.

Defendant has not met his burden to prove he had ineffective assistance of counsel when he was convicted in 1997. Nor has he demonstrated any other fundamental errors occurred at his plea colloquy. Therefore, he has not met his burden to demonstrate a fundamental error that resulted in a complete miscarriage of justice.

The Government additionally argues that Defendant cannot satisfy the elements required to set aside his guilty plea. (Doc. 85, at 8–9). A defendant seeking to withdraw his guilty plea through a writ of error *coram nobis* would need to: (1) demonstrate strong reasons for the withdrawal, (2) assert his innocence, and (3) show that the withdrawal will not unduly prejudice the government. *Mendoza*, 690 F.3d at 160–61 (citing *United States v. Jones,* 336 F.3d 245, 252 (3d Cir.2003)).

Here, the Defendant is not asserting his innocence. Defendant is seeking to convert his conviction for possession with the intent to distribute and the distribution of cocaine into an "entry of a conviction for simple possession of cocaine." (Doc. 77, at 10, 15). Henry cannot withdraw his guilty plea in order to change one drug-related conviction to another drug-related conviction; he must be asserting that he was in fact innocent. Defendant's passing claim that "Petitioner is innocent now, and Petitioner was innocent when he pled guilty" is directly contradicted by his own brief seeking to modify the conviction to a misdemeanor. (Doc. 89, at 6).

Furthermore, Henry cannot show that the withdrawal will not unduly prejudice the government. In *Osser,* the Third Circuit held that the defendant's attempt to seek relief fifteen years after a conviction "would disproportionately harm the prosecution." 864 F.2d at 1062. *See also Mendoza*, 690 F.3d at 160–61 (ten-year delay would cause undue prejudice). Undoubtedly, the lapse of 23 years since Henry's conviction would unduly prejudice the government if it was forced to re-litigate.

The Court notes that Defendant has provided a lengthy argument regarding three drug-related convictions based on Tennessee state law as well as alleging the attorney who represented him at the time of those convictions provided him ineffective assistance. (Doc. 89, at 21–28). These assertions are not remotely related to this matter, and therefore, will not be addressed.

### III. CONCLUSION

For the foregoing reasons, this Court will deny Defendant's Petition for Writ of *Coram Nobis* (Doc. 77) as set forth in this Memorandum Opinion. A separate Order follows.

Robert D. Mariani
United States District Judge